CLERKS OFFICE U.S. DIST. COURT
AT ABINGDON, VA
FILED

May 19, 2026
LAURA A. AUSTIN, CLERK
BY: s/ FELICIA CLARK
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## DANVILLE DIVISION

| | | |
|---|---|---|
| **NANCY LARISSA DEEDRICH,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:24CV00008 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **DANVILLE REDEVELOPMENT &** | ) | JUDGE JAMES P. JONES |
| **HOUSING AUTHORITY,** | ) | |
| | ) | |
| Defendant. | ) | |

*Christopher E. Collins,* YUGO COLLINS, *PLLC, Roanoke, Virginia, for Plaintiff; Jonathan W. Gonzalez,* GORDON REES SCULLY MANSUKHANI, *LLP, Williamsburg, Virginia, for Defendant.*

Plaintiff Nancy Larissa Deedrich sues her former employer, Danville Redevelopment & Housing Authority ("the Housing Authority"), alleging a wrongful constructive discharge in violation of the False Claims Act, 31 U.S.C. § 3730(h) (Count I) and Virginia's *Bowman* doctrine (Count V). The Housing Authority has moved for summary judgment, which motion has been fully briefed and orally argued. For the reasons that follow, summary judgment will be granted as to Count V and denied as to Count I and Count I will be left to be resolved at trial.[1]

---

[1] The Housing Authority also moved for summary judgment as to a state law breach of contract claim (Count III). Deedrich has conceded this claim and summary judgment will be granted solely as to this cause of action. Claims under Virginia's anti-retaliation statute (Count II) and the Virginia Wage Payment Act (Count IV) were earlier dismissed

## I. BACKGROUND.

The following facts are taken from the summary judgment record.  In May 2019, the Housing Authority implemented a procurement policy that applied to its procurement of outside services.  Plaintiff Deedrich became the director of Housing Authority on April 1, 2020.  As director, Deedrich had full control over contracts and purchases under $10,000.  For procurements over $10,000, additional requirements applied.  Katya Urraco was hired as the Housing Authority's chief financial officer on April 1, 2022.

Starting in 2022, Deedrich approved several contracts and services with two entities for a total value of about $300,000.  The payments concerned services performed in part by Deedrich's husband.  However, the work was subcontracted to avoid the appearance of a conflict of interest.  The parties agree that Deedrich received formal approval from the Housing Authority board in only one instance. But Deedrich argues that she believed that the contracts were exempt from typical procedures.

In September 2023, Katya Urraco raised concerns about a contract purportedly valued at over $100,000 per year, which she believed Deedrich had pursued in violation of Housing Authority policy.  Deedrich counters that this

---

in response to the defendant's Rule 12(b)(6) motion.  Op. & Order, Dkt. No. 24 (Apr. 30, 2025).  I will also resolve in this Opinion and Order two other pending motions.

document was a "scope of work" and the pricing section was unsigned because Deedrich could not commit the Housing Authority to a contract of that size without Board approval.

The Housing Authority subsequently began an investigation into Deedrich's conduct approving contracts and payments. During the course of the investigation, the Housing Authority uncovered what it believed to be additional procurement irregularities.

Meanwhile, in October 2023, Deedrich learned of a payment to Blu Malachite, a North Carolina entity, which she believed to be fraudulent. Deedrich determined that Blu Malachite was registered to Katya Urraco's sister, Isabella Urraco, who had worked for the Housing Authority as an unpaid intern. However, the Housing Authority was not authorized to pay Isabella because Isabella was an undocumented immigrant and could not legally work in the United States. Deedrich believed that Katya processed the payment to the Blue Malachite to circumvent restrictions on paying her sister. Deedrich then reported the payment to the Housing Authority's board of directors and its attorney. Soon after, she received a call from Alonzo Jones, the mayor of Danville, and chair of the House Authority's board of directors, asking if she and Katya could "work together" to keep their jobs.

Later, Deedrich learned that she would not receive a raise and extension on her employment contract. Deedrich believed this was retaliation for reporting the

payment and detailed her concerns in an email to the Housing Authority's attorney. In response, the attorney forwarded the email to another attorney, and an exchange ensued, criticizing Deedrich and indicating that the board might be planning to fire her.

On December 4, 2023, the Housing Authority's board issued Deedrich a "Corrective Action Memorandum" regarding the results of its investigation into her contracting procedures. On January 3, 2024, Deedrich resigned from her position with the Housing Authority.

## II. STANDARD OF REVIEW.

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if its existence or non-existence could result in a different jury verdict. *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). When ruling on a summary judgment motion, the court should consider the parties' pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. *Celotex Corp. v. Catrett ex rel. Estate of Catrett*, 477 U.S. 317, 322 (1986). "[T]he nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783 (4th Cir. 2021) (unpublished) (quoting

*Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)).

"[C]ourts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2728 (3d ed. 1998)).  The court may not assess credibility in a motion for summary judgment.  *Id.* at 569.

III.  SUFFICIENCY OF THE ALLEGATIONS.

A.  Count I: False Claims Act Retaliation.

The Housing Authority is moving for summary judgment as to Deedrich's claim for retaliation under the False Claims Act ("FCA").  The Housing Authority contends that the summary judgment record establishes that Deedrich's decision to report the Blu Malachite payment did not result in an adverse employment action. Because a reasonable jury could find that Deedrich was not provided with a contract extension and raise due to her whistleblowing activity, I will deny the Housing Authority's motion as to Count I.

To establish a prima facie case of FCA retaliation, it must be shown that (1) the employee engaged in a protected activity; (2) the employer knew about the

protected activity; and (3) the employer retaliated against the employee in response. *Carlson v. DynCorp Int'l LLC*, 657 F. App'x 168, 170 (4th Cir. 2016) (unpublished).

A plaintiff who does not have direct evidence of retaliation can proceed under the *McDonnell Douglas v. Green,* 411 U.S. 792, 802 (1973), burden-shifting framework. Under *McDonnell Douglas*, the plaintiff has the initial burden of establishing a prima facie case. Once the plaintiff establishes a prima facie case of retaliation under the FCA, the burden shifts to the defendant to respond with evidence that it had a legitimate, nonretaliatory reason for its action. *Leverette v. Louis Berger U.S., Inc.*, No. 22-1891, 2024 WL 2355419, at *1 (4th Cir. May 23, 2024) (unpublished). If the defendant can make this showing, the burden shifts back to the plaintiff to present evidence that the defendant's articulated reason was pretext for unlawful retaliation. *Id.*

The Housing Authority argues that although Deedrich has presented a prima facie case of retaliation, the legitimacy of its investigation into Deedrich defeats her claim under the burden-shifting analysis. The summary judgment record contains evidence of potential procedural irregularities in Deedrich's contracting process. However, the parties seem to dispute the board's preexisting knowledge of those contracts. Still, as the Housing Authority points out, the investigation was initiated before Deedrich's report of the fraudulent payment. Thus, her reporting activity did not spark the investigation in its entirety.

On the other hand, Deedrich's reporting activity could have influenced the way the investigation proceeded, as well as its outcome. Soon after she identified the Blu Malachite payment, Deedrich was criticized in an email thread that indicated that her reporting might be the "last straw" in an effort to fire her. She also received a Corrective Action Memorandum and confirmation that the board would not implement a contract extension or raise. In sum, a jury could conclude that while the initiation of the investigation was not a pretext, it could have ultimately been a pretext to push Deedrich out due to frustrations with her reporting activities. Accordingly, the Housing Authority's Motion for Summary Judgment as to Count I is denied.

### B.  Count V: *Bowman* Claim.

The Housing Authority also moves for summary judgment as to Deedrich's *Bowman* claim, alleging that she has not identified a statute that supports her claim. I agree.

Generally, employment in Virginia is at will, but the Supreme Court of Virginia in *Bowman v. State Bank of Keysville,* 331 S.E.2d 797 (Va. 1985), created "an exception to the employment-at-will doctrine limited to discharges which violate *public* policy, that is, the policy underlying existing laws designed to protect the property rights, personal freedoms, health, safety, or welfare of the people in general." *Miller v. SEVAMP, Inc.,* 362 S.E.2d 915, 918 (Va. 1987). This exception

only applies in narrow circumstances, and "[a]s a threshold matter, a plaintiff attempting to assert a wrongful discharge claim pursuant to *Bowman* must identify a Virginia statute that the employer-defendant violated by terminating the plaintiff." *Storey v. Patient First Corp.*, 207 F.Supp. 2d 431, 450 (E.D. Va. 2002).

Deedrich argues that her *Bowman* claim is viable because the same conduct can violate multiple statutes. Although that is true, a plaintiff still must provide a basis for the claim. Deedrich argues that the Virginia Fraud Against Taxpayers Act (VFATA), Va. Code. Ann. § 8.01-216.8. , is a suitable predicate because it states a public policy of protecting employees who report fraud from retaliation. Deedrich further contends that VFATA's existing remedial scheme does not preclude her from using it as the predicate for a *Bowman* claim because its definition of "employee" does not apply to her.

First, VFATA is not a viable predicate for a *Bowman* claim because it contains its own exclusive remedy, and claims must therefore be brought under the statute itself. Recent Virginia caselaw reiterates that a statute that provides its own remedial scheme cannot form the basis of a *Bowman* claim. At oral argument, the Housing Authority cited *Bauserman v. City of Winchester*, which explained that "Virginia law does not permit retaliatory discharge claims based on public policies contained in statutes which themselves provide a remedy for enforcing and vindicating that policy." No. 2215-23-4, 2025 WL 2109116, at *4 (Va. Ct. App. July 29, 2025)

– 8 –

(citing *Concerned Taxpayers of Brunswick Cnty. v. Cnty. of Brunswick*, 455 S.E.2d 712, 717 (Va. 1995). The Fourth Circuit recently considered the availability of a *Bowman* claim under a statute that contains its own remedies in *Skidmore v. Schinke,* 171 F.4th 319 (4th Cir. 2026). In *Skidmore*, the employee-plaintiff argued that his Bowman claim was not foreclosed because the relevant statute "create[d] a remedy for a government entity — not the employee whose rights were violated." *Id.* at 325 (citation omitted). The court agreed, noting that while the plaintiff's argument was "far from airtight," no Virginia court had specifically considered the viability of a Bowman claim under that specific statute. *Id.* Accordingly, the court held that the claim could proceed.

The circumstances here are different. As discussed below, VFATA provides its own remedial scheme that includes employees like the plaintiff. Thus, *Skidmore* is not dispositive and VFATA is precluded from being a predicate for a *Bowman* claim.

Second, VFATA's remedial scheme applies to Deedrich because its definition of employee and employer includes political subdivisions like the Housing Authority. VFATA defines "employee" as "an employee or officer of the Commonwealth" and "employer" as "the Commonwealth." § 8.01-216.2. At the same time, its definition of "Commonwealth" includes "any political subdivision of the Commonwealth." Because the Housing Authority here is a political subdivision

– 9 –

of the state, I find that VFATA contemplated it in its definition. Accordingly, Deedrich's argument that she would be precluded from obtaining a remedy under VFATA given her employer fails.

### IV. MOTION FOR EXTENSION OF TIME TO FILE ANSWER.

The Housing Authority has moved for an extension of time to file an answer after errantly failing to file an answer in response to Deedrich's complaint. The Housing Authority timely moved to dismiss, but after the court granted in part and denied in part the motion to dismiss, it did not timely file an answer. Fed. R. Civ. P. 12(a)(4)(A) (if court denies initial motion, responsive pleading must be filed within 14 days.) Under Rule 6(b)(1)(b), courts "may, for good cause, extend the time" to file an answer "if the party failed to act because of excusable neglect." Through this, Congress enabled the courts "where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control." *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993). In conducting an analysis, courts consider "the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* at 395. I find that these factors support permitting the filing of a late answer.

First, there is no danger of prejudice to Deedrich if the Housing Authority files a late answer. Discovery has concluded, and the Housing Authority has maintained its position on relevant facts both in the discovery process and in the briefs it has filed. Although Deedrich may have hoped to gain a strategic advantage by the lack of a timely answer through its ability to deem certain facts "admitted," I do not find that Deedrich experienced genuine confusion as to the Housing Authority's stance on those facts.

Second, the length of the delay will not significantly affect judicial proceedings. The Housing Authority's proposed answer will be filed well after the deadline, but it does not contain information that would affect the processing of this case, including the scheduling of trial. The third factor, the reason for the delay, is the least persuasive in my decision to grant the Housing Authority's motion, because the failure to file an answer is simply due to oversight on the part of the Housing Authority's counsel. At the same time, as noted above, the Rule contemplates oversights. Finally, the Housing Authority has acted in good faith. There is no indication that the Housing Authority intentionally failed to file an answer or seeks to file one now for any untoward purpose. Accordingly, I will grant the Housing Authority's motion and permit it to file a late answer.

– 11 –

## V. MOTION TO STRIKE.

The Housing Authority moves to strike portions of Deedrich's brief and exhibits pursuant to Federal Rule of Civil Procedure 12(f), alleging that they contain privileged information. Dkt. No. 43. Deedrich responds that the Rule applies only to "a pleading" and thus is not relevant to briefs and exhibits. I agree and will deny the Housing Authority's motion.

Federal Rule of Civil Procedure 7(a) includes only complaints and answers in its definition of "pleadings." Therefore, I find that there are no grounds to strike the portions of Deedrich's brief and exhibits that the Housing Authority has identified. If Deedrich attempts to introduce these matters at trial and an objection is raised on privilege grounds, I will decide the issues at that time.

## VI. CONCLUSION.

For the foregoing reasons, the Housing Authority's Motion for Summary Judgment, ECF No. 35, is GRANTED in part and DENIED in part. Summary judgment is GRANTED as to Count V but DENIED as to Count I. The Housing Authority's Motion for an Extension of Time to File an Answer, ECF No. 45, is GRANTED. The Housing Authority's Motion to Strike, ECF No. 43, is DENIED.

It is so **ORDERED**.

ENTER:   May 19, 2026

/s/  JAMES P. JONES
Senior United States District Judge

– 12 –